UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JACKIE D. DUDLEY, | ) | CASE NO. 5:09CV2467 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION** |
| SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

Jackie D. Dudley ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court REVERSES the Commissioner's decision and remands this case for further proceedings:

I.   **PROCEDURAL AND FACTUAL HISTORY**

Plaintiff filed applications for DIB and SSI on April 11, 2006 alleging disability beginning March 18, 2002. ECF Dkt. #13-6. The SSA denied Plaintiff's applications initially and upon reconsideration. ECF Dkt. #13-5. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). *Id*.

On February 5, 2009, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. ECF Dkt. #13-3 at 2. At the hearing, the ALJ heard testimony from Plaintiff, her mental health case manager, and a vocational expert ("VE"). *Id*. On April 28, 2009, the ALJ issued a Notice of Decision - Unfavorable. ECF Dkt. #13-2 at 9-20. Plaintiff filed a request for review, which the Appeals Council denied. *Id*. at 1-5.

On October 21, 2009, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On March 4, 2010, Plaintiff filed a brief on the merits. ECF Dkt. #14. On May 5,

2010, Defendant filed a brief on the merits. ECF Dkt. #16.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ found that Plaintiff had the severe impairments of chronic obstructive pulmonary disease and bipolar disorder. ECF Dkt. #13-2 at 11. The ALJ determined that Plaintiff's impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 12-13. The ALJ specifically considered Plaintiff's impairments under Listing 3.00 for respiratory conditions and Listing 12.04 for affective disorders. *Id*. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work consisting of simple, routine tasks that could be performed independently with superficial interaction with coworkers and supervisors and no direct interaction with the general public and no concentrated exposure to pulmonary irritants. *Id*. at 13.

Based upon his RFC finding, the ALJ determined that Plaintiff could not perform her past relevant work as a nurse's aide, customer service representative or bank teller, but she could perform jobs existing in significant numbers in the national economy. ECF Dkt. #13-2 at 18.

## III. **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

The Court notes that Plaintiff limits her allegations of ALJ error to the analysis of her mental impairment. ECF Dkt. #14 at 2. Accordingly, the Court's opinion will also limit review to the ALJ's analysis of this impairment.

Plaintiff contends that the ALJ lacked substantial evidence with which to find that she could perform jobs existing in significant numbers in the national economy. ECF Dkt. #14 at 12. More

specifically, she asserts that the ALJ erred in rejecting the opinions of her treating psychiatrist, Dr. Myung Kwak, and her mental health case manager, Ms. Dionna Stokes-Ellis. *Id.* at 13.

The Court notes that the ALJ cited no medical support at Step Three for his finding that Plaintiff's mental impairment did not meet or medically equal Listing 12.04B or C. ECF Dkt. #13-2 at 13-14. He did review medical evidence in his Step Four analysis, however. *Id.* at 5-10. The ALJ also erroneously indicated in Step Three that Plaintiff had a tenth grade education and referred to her with a male pronoun when he discussed whether the "paragraph C" criteria of Listing 12.04 were satisfied. *Id.* at 14. However, since Plaintiff does not challenge the ALJ's Step Three finding, any argument asserting ALJ error in finding that her condition did not meet or medically equal a Listing is waived. *See Heston v. Comm'r of Social Sec.*, 245 F.3d 528, 534-35 (6th Cir. 2001) (arguments not raised in the district court are deemed to be waived).

At Step Four of the sequential analysis, the ALJ reviewed the medical evidence and gave greater weight to Dr. Kwak's treatment notes rather than to his January 29, 2009 opinion. ECF Dkt. #13-2 at 18-20. Dr. Kwak completed a mental RFC assessment on January 29, 2009 in which he diagnosed Plaintiff with major recurrent depression and opined that her mental impairment caused her moderate difficulties in daily living activities, marked deficiencies in her abilities to maintain social functioning, marked deficiencies in her concentration, persistence and pace that would result in failure to complete tasks in a timely manner, and marked limitations in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances. ECF Dkt. #13-22 at 31. The form drafted by Plaintiff's attorney that Dr. Kwak completed defined moderate as meaning that Plaintiff would be affected by the limitation at least two hours per day but not more than three hours. *Id*. The form defined marked limitation as the limitation affecting the individual more than three hours per day and up to six hours per day. *Id.* Dr. Kwak checked the signs and symptoms of Plaintiff's depression as: anhedonia or loss of interest in almost all activities; mood disturbance; suicidal ideation or attempts; sleep disturbance; feelings of guilt or worthlessness; difficulty thinking or concentrating; generalized persistent anxiety; recurrent and intrusive recollections of a traumatic experience which are a source of marked distress; poor memory; hallucinations or delusions; and hostility or irritability. *Id*. at 29. When asked to describe the

clinical findings that demonstrated the severity of Plaintiff's mental impairment and symptoms, Dr. Kwak indicated that "patient is withdrawn with minimal contact with outside." *Id.* Dr. Kwak further noted that pharmacological management had shown only mild improvement and he concluded that Plaintiff was not a malingerer. *Id.* at 30. He also found that Plaintiff's prognosis was guarded and she would miss work four or more times per month because of her impairment or treatment. *Id.* at 30-31. He rated Plaintiff's GAF at 51 for the present and as her highest GAF for the past year. *Id.* at 29.

In reviewing Dr. Kwak's opinion, the ALJ stated that he had reviewed the doctor's January 29, 2009 opinion and found that it seemed based primarily upon Plaintiff's subjective complaints and was not consistent with Dr. Kwak's clinical findings in his actual treatment notes. ECF Dkt. #13-2 at 19. The ALJ explained that he resolved "the conflict" by attributing greater weight to the treatment notes, which he considered more reliable because they were prepared in the course of treatment. *Id*. He further indicated that he accommodated Dr. Kwak's treatment notes with a mental RFC limiting Plaintiff to simple routine tasks that could be performed independently. *Id*.

The ALJ must articulate "good reasons" for not attributing controlling weight to a treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Providing "good reasons" for discounting a treating physician's opinion means that an ALJ must provide "reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007), citing Social Security Ruling ("SSR) 96-2p, 1996 WL 374188, at *5) (emphasis added); *see also Wilson*, 378 F.3d at 544. An ALJ must give controlling weight to the opinions of a treating physician if the ALJ finds that the opinions on the nature and severity of an impairment are "well supported by medically acceptable clinical and laboratory diagnostic techniques and []not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2).

If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2)(i),(d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment

relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record.  20 C.F.R. § 404.1527(d)(2), 416.927(d)(2).

However, the Sixth Circuit has held that the good reason requirement "does not require conformity at all times" and such a failure amounts to harmless error:

> if the ALJ has met the goals of the procedural requirement-to ensure adequacy of review and to permit the claimant to understand the disposition of his case-even though he failed to comply with the regulation's terms. *Id.* [*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)].  An ALJ may accomplish the goals of this procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.

*Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 2010 WL 3199693, at *4 (6th Cir. Aug. 12, 2010), unpublished, citing *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 470-472 (6th Cir. 2006) and *Hall v. Comm'r of Soc. Sec.*, 148 Fed. App'x 456, 464-465 (6th Cir. 2005).

The Court finds that the ALJ failed to provide sufficient reasons for attributing less than controlling weight to Dr. Kwak's opinion.  The ALJ's first reason for attributing less than controlling weight to Dr. Kwak's opinion lacks merit.  Attributing less weight to a treating psychiatrist's opinion because it appears based primarily upon the subjective complaints of a claimant is insufficient since "psychology and psychiatry are, by definition, dependent on subjective presentations by the patient" and this rationale for rejecting a treating psychiatrist's opinion, "taken to its logical extreme...would justify the rejection of opinions by all mental health professionals[] in every case."  *Winning v. Comm'r of Soc. Sec.*, 661 F.Supp.2d 807, 821 (N.D. Ohio 2009).

The ALJ's second reason for rejecting Dr. Kwak's opinion is also insufficient.  While the ALJ found that Dr. Kwak's opinion as to Plaintiff's functional limitations was not consistent with his actual treatment notes, the ALJ failed to elaborate on this conclusion.  ECF Dkt. #13-2 at 19. It is unclear how Dr. Kwak's opinion is not consistent with the other mental health professionals' notes and assessments in the record, including those made by Ms. Dionna Stokes-Ellis, Plaintiff's

treating mental health case manager, and the examining agency psychologist, Mr. Mohler. Ms. Stokes-Ellis' mental RFC assessment mirrored that of Dr. Kwak and Mr. Mohler's mental RFC assessment indicated a moderate to marked limitation in Plaintiff's ability to socially interact, the function found markedly limited by both Dr. Kwak and Ms. Stokes-Ellis. ECF Dkt. #13-17 at 20; ECF Dkt. #13-22 at 34. Moreover, the ALJ did not explain the weight the he gave to Dr. Kwak's opinion once he chose not to give it controlling weight under the treating physician rule. "In all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its noncontrolling status notwithstanding." *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544-545.

Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the Court not reverse a case where ALJ failed to observe the requirements for evaluating the weight given to a treating physician. *Wilson*, 378 F.3d at 547. The Sixth Circuit stated in *Rogers*:

> Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers*, 486 F.3d at 243. Since Dr. Kwak's opinion in the instant case is not "patently deficient" such that it could not be credited, and since the ALJ failed to identify and explain the weight given to Dr. Kwak's opinion, the Court reverses and remands this case for the ALJ to reconsider Plaintiff's mental RFC and properly apply the treating physician rule to Dr. Kwak's opinion and mental RFC assessment. *See Potter v. Astrue*, No. 3:09CV169, 2010 WL 2679754, at *9 (S.D. Ohio June 2, 2010, citing *Rogers*, 486 F.3d at 246.)("Despite citing some reasons for discounting Dr. Gollamudi's opinion, then, ALJ Armstead never fully explained how those reasons affected the weight he gave to Dr. Gollamudi's opinion, or even what weight he ultimately accorded that opinion.").

In addition, the Court finds merit to Plaintiff's assertion that the ALJ erred in evaluating the opinions of Ms. Stokes-Ellis, Plaintiff's mental health case manager. The ALJ reviewed the mental RFC assessment conducted by Ms. Stokes-Ellis and gave it little weight, not only because Ms.

Stokes-Ellis was not an acceptable medical source, but also because the evidence as a whole did not support the limitation that she indicated. ECF Dkt. #13-2 at 18. The ALJ cited to Finding Number 4 of his decision for the explanation for his conclusion as to why he found that Plaintiff had no more than moderate limitations in the areas considered by Ms. Stokes-Ellis. *Id*. However, Finding Number 4 is nothing more than a review of Plaintiff's reports of her daily living activities and social functioning and a social security office employee's notes regarding Plaintiff's difficulty remembering dates and Plaintiff's report to the employee that she was preoccupied with her physical and mental problems that she could not focus. *Id*. at 13-14.

Just as with Dr. Kwak's mental RFC assessment and treatment notes, the ALJ failed to explain his reasoning for giving little weight to the opinions of Plaintiff's mental health case manager for the last two years. While the ALJ correctly indicated that case managers such as Ms. Stokes-Ellis do not qualify as "acceptable medical sources," Social Security Ruling ("SSR") 06-03p explains how the ALJ evaluates the opinions and other evidence from those who are not "acceptable medical sources":

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as ... licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.

SSR 06-03p, 2006 WL 2329939, at *3. The Ruling goes on to state that the ALJ should evaluate the opinions from non-medical sources who have seen the claimant in their professional capacity "by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir.2007) (citations omitted). SSR 06-03p also states that:

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions for these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03P, 2006 WL 2329939, at *6. Merely referring back to Finding Number 4 which reviewed the ALJ's mental RFC for Plaintiff does not adequately explain the ALJ's decision to give little weight to Ms. Stokes-Ellis' opinion, when Ms. Stokes-Ellis provided services sometimes twice a week to Plaintiff and provided detailed notes and a detailed assessment of Plaintiff's functional limitations, which was consistent with the assessment of Dr. Kwak.

In addition, the Court finds that the ALJ provides no explanation for his own mental RFC determination for Plaintiff. He discounts and discredits the mental health professionals that examined and treated Plaintiff, and he further finds that Plaintiff had greater nonexertional limitations than those opined by the nonexamining agency consultants since updated medical evidence and testimony were provided since those assessments. ECF Dkt. #13-2 at 19. While the ultimate determination of RFC is left to the ALJ, and it is the ALJ who determines a claimant's RFC based upon the record as a whole,

> [i]n rendering his RFC decision, an ALJ must give some indication of the specific evidence on which he is relying and of the clinical findings associated with the limitations he has found. Otherwise, a reviewing court would be left to speculate as to the method utilized and evidence relied upon by the ALJ in arriving at his RFC determination. That is the situation here, where this Court simply cannot discern from the record or the ALJ's decision the underlying basis for the ALJ's RFC findings.

*Potter*, 2010 WL 2679754, at *11. Giving more weight to the actual treatment notes of Dr. Kwak and indicating that the ALJ is accommodating the opinions of record with his mental RFC for Plaintiff provides no real insight into the ALJ's method for determining the mental RFC determination or the evidence that he relied upon in determining that mental RFC. *Id.*

## VI. CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS the instant case for the ALJ to reevaluate the medical source opinions under the proper legal standards set forth in the Social Security Regulations, Rulings and caselaw.  The ALJ must explain the evaluation of these sources and the weight attributed to them, as well as the evaluation and evidence supporting the ALJ's mental RFC for Plaintiff.

DATE:  January 26, 2011     /s/George J. Limbert
                            GEORGE J. LIMBERT
                            UNITED STATES MAGISTRATE JUDGE